1
2
3
4          UNITED STATES DISTRICT COURT
         WESTERN DISTRICT OF WASHINGTON
5                  AT TACOMA

6    MICHAEL A.H. OWEN,
                                          Case No. 3:17-cv-05193-TLF
7                        Plaintiff,
                                          ORDER AFFIRMING
8          v.                             DEFENDANT'S DECISION TO
                                          DENY BENEFITS
9    NANCY A. BERRYHILL, Acting
     Commissioner of Social Security
10
                         Defendant.
11

12          Plaintiff has brought this matter for judicial review of defendant's denial of his

13   applications for disability insurance and supplemental security income (SSI) benefits. The parties

14   have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. §

15   636(c), Federal Rule of Civil Procedure 73; Local Rule MJR 13. For the reasons set forth below,

16   the Court finds defendant's decision to deny benefits should be affirmed.

17                    FACTUAL AND PROCEDURAL HISTORY

18          On January 17, 2014, plaintiff filed an application for disability insurance benefits and

19   another one for SSI benefits, alleging in both applications that he became disabled beginning

20   December 1, 2012. Dkt. 11, Administrative Record (AR) 12. Both applications were denied on

21   initial administrative review and on reconsideration. *Id.* A hearing was held before an

22   administrative law judge (ALJ), at which plaintiff appeared and testified as did a vocational

23   expert. AR 29-71.

24

25

1    In a decision dated October 15, 2015, the ALJ utilized the five step criteria, and decided

2    the first four steps in plaintiff's favor. The ALJ determined at step five that the plaintiff is not

3    disabled. According to the ALJ's decision, the plaintiff has the following severe impairments:

4    left knee tendinopathy and chondromalacia patella; also high frequency hearing loss, lumbago,

5    attention deficit hyperactivity disorder (ADHD), major depressive disorder, and panic disorder.

6    AR 14.

7        At step five, the ALJ found that plaintiff could perform other jobs existing in significant

8    numbers in the national economy and therefore that he was not disabled. AR 12-24. Plaintiff's

9    request for review was denied by the Appeals Council on January 10, 2017, making the ALJ's

10   decision the final decision of the Commissioner, which plaintiff then appealed in a complaint

11   filed with this Court on March 23, 2017. AR 1; Dkt. 3; 20 C.F.R. § 404.981, § 416.1481.

12       Plaintiff seeks reversal of the ALJ's decision and remand for further administrative

13   proceedings, arguing the ALJ erred: in evaluating the medical evidence in the record; in

14   discounting plaintiff's testimony; in rejecting the lay witness evidence; in assessing plaintiff's

15   residual functional capacity ("RFC"); and in finding plaintiff could perform other jobs existing in

16   significant numbers in the national economy. For the reasons set forth below, the Court affirms

17   the ALJ's decision.

18                    STANDARD AND SCOPE OF REVIEW

19       The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error;

20   or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill,* 874 F.3d 648,

21   654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might

22   accept as adequate to support a conclusion.'" *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir.

23   2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir.

24   1988)). This requires "'more than a mere scintilla,'" though "'less than a preponderance'" of the

25

evidence. *Id.* (quoting *Desrosiers*, 846 F.2d at 576). If more than one rational interpretation can be drawn from the evidence, then the Court must uphold the ALJ's interpretation. *Orn v. Astrue,* 495 F.3d 625, 630 (9th Cir. 2007). That is, "[w]here there is conflicting evidence sufficient to support either outcome," the Court "must affirm the decision actually made." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)). The Court may not affirm by locating a quantum of supporting evidence and ignoring the non-supporting evidence. *Orn v. Astrue,* at 630.

The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court is required to weigh both the evidence that supports, and evidence that does not support, the ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* Only the reasons identified by the ALJ are considered in the scope of the Court's review. *Id.*

I.      The ALJ's Evaluation of the Medical Evidence For Determination of RFC at Step Five

The plaintiff alleges that the ALJ erred in several respects concerning the assessment of Mr. Owen's residual functional capacity, and the ALJ's resulting decision (at step five) that plaintiff is not disabled. At step five of the sequential disability evaluation process, the ALJ must show there are a significant number of jobs in the national economy the claimant is able to perform. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); 20 C.F.R. § 404.1520(e). The ALJ can do this through testimony of a vocational expert. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162-63 (9th Cir. 2000).

An ALJ's step five determination will be upheld if the weight of the medical evidence supports the hypothetical posed to the vocational expert. *Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1987). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. *Embrey v. Bowen*, 849 F.2d 418, 422-23 (9th

Cir. 1988). Accordingly, the ALJ's description of the claimant's functional limitations, which forms the residual functional capacity (RFC) determination, "'must be accurate, detailed, and supported by the medical record.'" *Id.* (quoting *Desrosiers*, 846 F.2d at 578 (Pregerson, J., concurring)).

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where the evidence is inconclusive, "questions of credibility and resolution of conflicts are functions solely of the [ALJ]." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). In such situations, "the ALJ's conclusion must be upheld." *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" medical opinions "falls within this responsibility." *Id.* at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* The ALJ also may draw inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755, (9th Cir. 1989).

There are several categories of medical professionals that typically provide information that is reviewed during the Social Security application and appeal process. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996); *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996). Some of the most common are: First, medical doctors in the role of treating physicians, who actually

treated the claimant; second, medical doctors in the role of examining physicians, who examined but did not treat the claimant; third, medical doctors who are non-examining physicians and neither treated nor examined the claimant but reviewed medical records and other information; and fourth, acceptable medical sources who are medical professionals but do not fall into the category of any type of medical doctor; and fifth, other sources. *Molina v. Astrue,* 674 F.3d 1104, 1111-12 (9th Cir. 2012); *Lester,* 81 F.3d at 830; *see, Leon v. Berryhill,* 874 F.3d 1130, 1133-34 (nurse practitioner is an acceptable medical treating source for claims filed after March 27, 2017, under updated regulation 20 C.F.R. § 404.1527 and § 416.920c); *Popa v. Berryhill,* 872 F.3d 901, 906 (9th Cir. 2017) (treatment provider with a PhD in nursing was an "other source" under the pre-March 27, 2017 regulation even though she was the primary treating medical provider for plaintiff); *Gomez,* 74 F.3d at 971 ("acceptable medical sources" included in regulations are, among others, licensed physicians and licensed or certified psychologists); 20 C.F.R. § 404.1513(a)-(d), § 404.1529(a),(c), § 416.913.

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). Even when a treating or examining physician's opinion is contradicted, an ALJ may only reject that opinion "by providing specific and legitimate reasons that are supported by substantial evidence." *Id*. However, the ALJ "need not discuss *all* evidence presented" to him or her. *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." *Id.*; *see also Cotter v. Harris*, 642 F.2d 700, 706-07 (3rd Cir. 1981); *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." *Id.* at 830-31; *Tonapetyan*, 242 F.3d at 1149.

A.    Dr. Phillips, treating physician

In December 2013, plaintiff's treating physician, Vincent Phillips, M.D., completed a physical functional assessment form, in which he opined that plaintiff was limited to sedentary work. AR 287. The ALJ gave that opinion "little weight" because Dr. Phillips' evaluations of plaintiff "did not have the type of significant clinical abnormalities to substantiate" it, and because it was inconsistent with the clinical findings of Patrick J. Halpin, M.D., who examined plaintiff in December 2012 (AR 256), as well as with the "unremarkable diagnostic imaging" of plaintiff's left knee (AR 257). AR 21.

In September 2015, Dr. Phillips filled out a Medical Source Statement concerning Mr. Owen's health status. AR 373-375. In that document, Dr. Phillips provided an opinion that Mr. Owen had a number of psychological and social limitations that were rated "moderate" in severity, seriously limiting his ability to perform the designated activity on a regular and sustained basis. AR 374-375. Dr. Phillips stated that these limitations would be continuous for 12 months or more, and that Mr. Owen had suffered from these limitations since age 5. *Id.* In

addition, Dr. Phillips made a hand-written note identifying another condition: that Mr. Owen had a "severe injury. . . knee also." AR 375. In a History and Physical Report #1 document prepared by Dr. Phillips dated 9-24-2015, Dr. Phillips opined that his assessment and plan regarding Mr. Owen's knee was: "Note: limited ROM Knee. . . .Pain in join, lower leg. . .acute on chronic for him. Continue the use of knee brace, ice, elevation of the knee. Get an xray of the knee. Tylenol and NSAIDS. Give muscle relaxant and tramadol for him to use for pain control as well. Order for a cane to use ambulating. Refer back to orthopedic for further care. . . ." AR 377.

Plaintiff argues the ALJ's reasons for discounting Dr. Phillips' opinion lack substantial evidentiary support, because Dr. Phillips completed a chart on November 1, 2013, indicating limited left hip and knee range of motion (AR 288), and because he found limited left knee range of motion in September 2015 (AR 377). These two instances of limited range of motion – some three years apart – do not outweigh the other fairly benign clinical findings the ALJ noted. *See* AR 21 (citing AR 306-41, 352-72). To the extent conflicts or ambiguities in the medical evidence exist, the ALJ offered a rational interpretation of that evidence, and thus it must be upheld by the Court. *Allen*, 749 F.2d at 579.

Plaintiff argues that the ALJ erred by overlooking that Dr. Phillips consistently opined that plaintiff relied on a leg brace and cane. Dkt. 15, p. 7. Use of a leg brace and cane to ambulate is consistent with the ALJ's interpretation of the evidence. The ALJ accounted for Mr. Owen's difficulty with ambulation when the ALJ determined that Mr. Owen could only stand or walk for two hours in an 8-hour work day. AR 16. The ALJ observed that Mr. Owen testified that he was able to stand for 15 to 20 minutes at a time using a cane, and that he could walk for 10 to 20 minutes at a time. AR 20, 55, 57. This is consistent with the ALJ's conclusion that he

could stand or walk for a total of two hours, at most, during an 8-hour work day, as long as it is not two continuous hours.

The Court does agree with plaintiff that the ALJ erred by not mentioning or giving any reasons for rejecting the moderate mental functional limitations Dr. Phillips indicated plaintiff had in a check-box form Dr. Phillips completed in September 2015. AR 373-75. However, the Court finds the ALJ's error to be harmless. An error is harmless if it is "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Comm'r, Social Security Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). Here, it is.

Dr. Phillips provides no objective findings or set forth any basis for the limitations he assessed other plaintiff's left knee injury. AR 375. An ALJ, however, is not required to accept the opinion of even a treating physician if that opinion is inadequately supported by clinical findings or the record as a whole. *Batson*, 359 F.3d at 1195.

Plaintiff does not challenge the ALJ's evaluation of the medical evidence in the record concerning his mental health condition, nor do Dr. Phillips' own treatment records reveal any significant abnormalities that likely would support the limitations he assessed. *See* AR 306-41, 352-72. In addition, given that the ALJ did not err in rejecting Dr. Phillips' December 2013 opinion based on a lack of objective evidentiary support for the physical limitations Dr. Phillips assessed, the existence of the left knee injury also would not likely cause the ALJ to adopt the September 2015 opinion.

B.      Ms. Tjersland and Mr. Barfield, other sources (licensed mental health counselors)

In November 2012, plaintiff was evaluated by Kari Tjersland, MA, LMHC, and Walt Barfield, MA, LMHC, who assessed a global assessment of functioning ("GAF") score of 55. AR 283. The ALJ gave that score "little weight," finding it had "little probative value as it [did]

not specifically describe [plaintiff'] functional limitations." AR 21. In addition, the ALJ stated that it did "not qualify as a medical opinion from an acceptable medical source." *Id.*

A GAF score is "a subjective determination based on a scale of 100 to 1 of 'the [mental health] clinician's judgment of the individual's overall level of functioning.'" *Pisciotta v. Astrue*, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007) (quoting American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* (Text Revision 4th ed. 2000) ("DSM-IV-TR") at 320. A GAF of 55 indicates moderate symptoms or "moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *Tagger v. Astrue*, 536 F.Supp.2d 1170, 1173 n.6 (C.D.Cal. 2008) (quoting DSM-IV-TR at 34).

Plaintiff argues the mere fact that Ms. Tjersland and Mr. Barfield are not acceptable medical sources is not a valid reason to reject their opinion. Mental health therapists are considered "other sources," and, plaintiff is correct that  their opinions may be considered, yet those opinions are given less weight than those of "acceptable medical sources." *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996) ("acceptable medical sources" include, among others, licensed physicians and licensed or certified psychologists); 20 C.F.R. § 404.1513(d), § 416.913(d). Nevertheless, evidence from such "other sources" may be used to "show the severity" of a claimant's impairments and their effect on the claimant's ability to work. 20 C.F.R. § 404.1513(d), § 416.913(d).

Evidence from these "other sources" may be discounted if, as with evidence from lay witnesses in general, the ALJ "gives reasons germane to each [source] for doing so." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citations omitted). Here, the ALJ did so by noting that the GAF score Ms. Tjersland and Mr. Barfield assessed offered little in the way of describing plaintiff's functional limitations. Plaintiff does not contest this conclusion.

Plaintiff contends that the ALJ gave no valid reason for rejecting Ms. Tjersland's and Mr. Barfield's finding that plaintiff exhibited anxious affect and a tangential stream of thought. AR 21, 282. Neither therapist assessed a specific functional limitation based on those findings. AR 282. Therefore, this Court finds that no error occurred. *See Gentle v. Barnhart*, 430 F.3d 865, 868 (7th Cir 2005) (noting that "[c]onditions must not be confused with disabilities," and that "[a] person can [experience mental and physical symptoms,] yet still perform full-time work"); *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) ("The mere existence of an impairment is insufficient proof of a disability."); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (noting that "[t]he mere diagnosis of [an impairment] . . . says nothing about the severity of the [diagnosed] condition," and upholding a finding of non-severity where doctors reports were silent as to any limitations that may stem from that impairment).

C.      Dr. Bowes, examining clinical psychologist

In November 2013, plaintiff was evaluated by Tasmyn Bowes, Psy.D., who found him to be moderately to markedly limited in a number of mental functional areas. AR 293-94. The ALJ gave Dr. Bowes' opinion "little weight" because it "did not have the type of significant clinical abnormalities to substantiate" it:

> Specifically, [Dr. Bowes] found [plaintiff] engaged appropriate[ly] and made good eye contact. [Dr. Bowes] found he had normal orientation, perception, memory, fund of knowledge, abstract thought, and insight and judgment. On MMSE [the mini mental status examination Dr. Bowes performed], [plaintiff] scored 28 out of 30 indicating normal cognition. Furthermore, [Dr. Bowes' opinion is] inconsistent with the unremarkable mental status examination of [plaintiff's mental health] treatment providers (Ex. 2F).

AR 21.

Plaintiff cites other mental status findings – such as being somewhat disorganized in presentation, significant psychomotor agitation, a depressed mood, and racing thoughts – to

argue Dr. Bowes' opinion is adequately supported. AR 294-95. Certainly, these findings are more supportive of that opinion. But as noted by the ALJ, in contrast there are a number of findings that are normal or fairly unremarkable. *Id.* Thus, at most, the evidence is conflicting. However, where there are ambiguities or conflicts in the evidence, the ALJ is responsible for resolving them. *Reddick*, 157 F.3d at 722; *Sample*, 694 F.2d at 642. Because the Court cannot say the ALJ's resolution of Dr. Bowes' conflicting findings is irrational, "the ALJ's conclusion must be upheld." *Morgan*, 169 F.3d at 601; *Allen*, 749 F.2d at 579.

D.     <u>Dr. Stevick, non-examining physician</u>

In July 2014, based on his review of the record, Drew Stevick, M.D., a non-examining physician, opined that plaintiff was limited to sedentary work. AR 106-108. Plaintiff argues the ALJ erred by not addressing this opinion. The Court agrees the ALJ's failure to do so was error, as Dr. Stevick's opinion constitutes significant probative evidence. But for the same reasons the Court finds harmless error concerning  the ALJ's failure to address Dr. Phillips' September 2015 opinion, here too the Court finds harmless error. The ALJ gave valid reasons for rejecting Dr. Phillips' September 2013 sedentary work opinion (given the lack of evidentiary support in the record therefor); and so it follows that – had the ALJ considered Dr. Stevick's similar opinion – he would likely have rejected  it too.

E.     <u>Other Medical Evidence</u>

Plaintiff mentions various other clinical findings in the record, but does not specifically link to – or adequately explain how those findings support – greater functional limitations than the ALJ adopted. Dkt. 15, pp. 3-8. Accordingly, to the extent plaintiff argues the ALJ erred in failing to properly address such evidence, the Court declines to find any error. *See Matthews v.*

*Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) ("The mere existence of an impairment is insufficient proof of a disability.").

II.     The ALJ's Evaluation of Plaintiff's Testimony

Questions of credibility are solely within the control of the ALJ. *Sample*, 694 F.2d at 642. The Court should not "second-guess" this credibility determination. *Allen*, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. *See id.* at 579. Even if the reasons for discrediting a claimant's testimony are properly discounted, that does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

The ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing", except in a situation where the claimant is found to be malingering. *Lester*, 81 F.2d at 834. The ALJ may reject the claimant's testimony if the evidence as a whole supports a finding of malingering. *See O'Donnell v. Barnhart*, 318 F.3d 811, 818 (8th Cir. 2003). To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." *Lester*, 81 F.3d at 834 (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*; *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. *Id.*

The ALJ found plaintiff's allegations of disabling symptoms and limitations not fully credible due to their inconsistency with the medical evidence in the record. AR 20. Given that the ALJ, as discussed above, did not commit any harmful error in evaluating that evidence, this constitutes a valid basis for discounting plaintiff's allegations. *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1998). Plaintiff is correct that a claimant's testimony may not be rejected "solely because the degree of pain alleged is not supported by objective medical evidence." *Orteza v. Shalala*, 50 F.3d 748, 749-50 (9th Cir. 1995) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir.1991) (*en banc*)). Here, though, as discussed below the ALJ provided other valid bases for doing so.

For example, the ALJ pointed out that plaintiff engaged in various activities of daily living to an extent one would not think plaintiff was capable of given his allegations of disabling pain symptoms (he rated his pain as between six and ten on a zero to ten scale), psychological problems, and consequent limitations. AR 20. Activities such as childcare, washing dishes, house cleaning, shopping, running errands, feeding pets, and other common domestic responsibilities, do not detract from a claimant's credibility regarding his or her overall disability. *Revels v. Berryhill,* 874 F.3d 648, 667 (9th Cir. 2017). Claimants do not need to show they are "utterly incapacitated in order to be disabled." *Id*. Yet a claimant's testimony may be discounted based on the claimant's activities if the claimant is able to spend "a substantial part" of the day performing "household chores or other activities that are transferable to a work setting," or if the claimant's activities contradict the claimant's "other testimony." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *Smolen*, 80 F.3d at 1284 n.7.

Plaintiff argues none of the activities the ALJ lists are inconsistent with his testimony or are transferrable to a work setting. The Court agrees that the common household chores the ALJ

lists standing alone do not suggest that plaintiff lacks credibility. The ALJ's decision fails to point to evidence in the record that plaintiff is able to perform them for a substantial part of the day, or that those chores necessarily are transferrable to a work setting. AR 20; *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (recognizing claimants "should not be penalized for attempting to lead normal lives in the face of their limitations").

Other listed activities do, however, provide ample basis for questioning the credibility of plaintiff's testimony concerning disabling mental functional limitations. The ALJ noted that while plaintiff testified that he was "easily distracted due to his ADHD" (AR 17), plaintiff reported he "read four to five different books at a time" and "watched a lot of documentaries," and further testified that he "attended community college for three semesters" (AR 20). It certainly was reasonable for the ALJ to find that engaging in these is not consistent with plaintiff's testimony that he is easily distracted. Accordingly, the ALJ did not err in discounting plaintiff's testimony on this basis.

The Court also finds no error on the ALJ's part in discounting plaintiff's testimony on the basis that he looked for work after the alleged onset date of disability. AR 20. Plaintiff argues the mere fact that he attempted to seek work and failed is not a valid basis to discount his testimony. Dkt. 15, p. 12 (citing *Lingenfelter v. Astrue*, 504 F.3d 1028 (9th Cir. 2007)). But in *Lingenfelter*, the work attempt "did not even take place during the relevant time period." 504 F.3d at 1039 (noting the claimant had the burden of proving he was disabled for at least the 12-month period during that time). The Ninth Circuit, furthermore, has subsequently found seeking work during the period of alleged disability to be a valid basis for discounting testimony. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (noting the claimant recently worked as a personal caregiver and had sought out other employment).

Here, plaintiff alleged an inability to work due to his mental and physical impairments. Yet, as the ALJ noted, he reported that "on a typical day he would look for jobs that he thought he could do, such as computer programming," and testified that he looked for work after 2011, which included a job interview in 2014. AR 20, 44, 291. Plaintiff's reporting and testimony thus indicate that he believed he was ready and capable of working, and that he made regular efforts to obtain work during the relevant time period. The ALJ thus reasonably relied on this evidence to discount plaintiff's claims concerning his inability to do otherwise.

The ALJ also was not remiss in discounting plaintiff's credibility based on inconsistent statements he made as to why he stopped working. The ALJ noted that while plaintiff reported he stopped working "because of his conditions," he also reported that he "was 'fired for dress code.'" AR 20, 218, 291. The ALJ further noted plaintiff testified that he stopped working for "other reasons unrelated to his alleged impairments," including the cost of commuting to work. AR 20, 42-43. There also appears to have been an issue with compensation. AR 42 ("We'd starting up a new office and part of it, I was supposed to get an increase in a couple of percentage points.").

Inconsistent reasons, or reasons other than a claimant's alleged disabling conditions, can constitute a valid basis for discounting testimony. *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (finding the ALJ gave "cogent reasons for disregarding [the claimant's] testimony," including because the claimant had "left his job because he was laid off, rather than because he was injured"). Plaintiff argues the totality of the evidence shows he stopped working due to his impairments, including an inability to meet the above-referenced dress code due to his need to wear a leg brace. AR 41. As just noted, however, reasons other than plaintiff's conditions were clearly put forth as reasons for stopping work as well. The ALJ thus reasonably interpreted this

1  evidence as indicating plaintiff stopped working at least in part for reasons other than his health

2  conditions, and did not err in discounting plaintiff's testimony on this basis.

3          The Court agrees with plaintiff's contention that two other reasons the ALJ gave for

4  discounting plaintiff's credibility were improper. For example, the ALJ found plaintiff's lack of

5  treatment suggested his symptoms were not as serious as alleged, pointing to "minimal

6  psychotherapy" and "no more than conservative treatment for his pain issues." AR 20. However,

7  it is improper to discount a claimant's credibility on the basis of failure to pursue treatment,

8  when the claimant "has a good reason for not" doing so. *Carmickle v. Comm'r, Soc. Sec. Admin.*,

9  533 F.3d 1155, 1162 (9th Cir. 2008). For example, Dr. Halpin felt there was not much that could

10  be done to help plaintiff's left knee "other than just conservative management." AR 256.

11          As for plaintiff's mental impairments, the ALJ noted there were no records of psychiatric

12  hospitalizations. AR 20. But there is no requirement that a claimant must be hospitalized in order

13  to be found disabled based on a mental impairment. In addition, while the ALJ characterizes the

14  evidence regarding plaintiff's psychotherapy as "minimal", the record shows he attended therapy

15  for at least several months. AR 261-85. And as plaintiff notes, the record shows he had been

16  taking medication for his mental health impairments. *See, e.g.,* AR 291, 308, 312, 314, 318-20,

17  325, 327-28, 335, 337-38, 340, 353-54, 356, 361, 365, 367-69, 371, 377-78. Because it is not

18  clear what more the ALJ believes plaintiff should have done in terms of pursuing mental health

19  treatment – other than psychiatric hospitalization – or treatment for his pain issues, this was not a

20  valid reason for discounting his testimony.

21          In addition, the ALJ erred in discounting plaintiff's testimony on the basis that plaintiff

22  performed work after his alleged onset date of disability. The ALJ noted that plaintiff testified he

23  did "web design work" for a friend in 2012. AR 21. The record, however, fails to establish the

24

25

level and extent to which plaintiff performed this work. *See* AR 38-39. For example, plaintiff reported that while he work 35-40 hours a week for the period 2005-2012, his friend gave him "a lot of lea way [sic]," and it ended up not working out due to plaintiff's ADHD. AR 291. As such, this evidence does not clearly and convincingly show plaintiff performed work in a manner or to an extent that necessarily contradicts his subjective complaints.

Not all of the ALJ's reasons for discounting plaintiff's testimony, accordingly, are valid. Nevertheless, the ALJ's invalid reasons are harmless error because the ALJ provided other proper reasons for discounting plaintiff's testimony, and those proper reasons are supported by substantial evidence in the record. *Tonapetyan*, 242 F.3d at 1148; *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (finding that while the ALJ relied on an improper reason for discounting the claimant's credibility, the ALJ presented other valid, independent bases for doing discounting it, each with "ample support in the record").

III.     The ALJ's Evaluation of the Lay Witness Evidence

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. *Id.* at 512. The ALJ also may "draw inferences logically flowing from the evidence." *Sample*, 694 F.2d at 642.

In June 2012, Amanda Kipp, a vocational rehabilitation counselor for the Division of Vocational Rehabilitation, checked boxes on a form indicating that plaintiff was significantly disabled due to one or more physical, mental, or sensory impairments, and that he required

"multiple vocational rehabilitation services (two or more) over an extended period of time to become employed." AR 342. She also checked boxes indicating plaintiff needed:

- a "modified or flexible work schedule, extra work periods, job modifications, or other accommodations due to physical or mental conditions or the side effects of medication."

- "[s]erious limitations involving movement such as sitting, standing, bending, reaching or lifting"; and

- "job modifications, learning accommodations, specialized training, adaptive technology or accommodations to perform specific work tasks."

AR 344, 349. In a narrative statement, Ms. Kipp opined that plaintiff: "experiences serious functional losses in Work Tolerance and Work Skills"; "has physical limitations due to his significant knee pain"; "is limited in standing, walking up stairs and lifting"; and has "back pain [that] may cause a need for specific accommodations." AR 349.

The ALJ gave Ms. Kipp's opinion "little weight" because it was "conclusory, providing no explanation of the evidence relied on in forming" it. AR 22. The ALJ also discounted Ms. Kipp's opinion on the basis that it "does not qualify as a medical opinion from an acceptable medical source," and that "the medical evidence of record does not support finding greater limitations than those" the ALJ adopted. *Id.* Plaintiff argues none of these reasons are germane reasons. The Court disagrees.

The fact that Ms. Kipp is not an acceptable medical source is not, standing alone, a germane reason for rejecting her opinion. 20 C.F.R. § 404.1513(d), § 416.913(d) (evidence from "other sources" may be used to "show the severity" of a claimant's impairments and their effect on the claimant's ability to work). Yet the ALJ's other two reasons are valid. Ms. Kipp offers no evidentiary support for the limitations she assessed. And as discussed above, the ALJ did not commit any harmful error in finding the medical evidence in the record did not support any

greater functional limitations. The ALJ, therefore, did not err in discounting the lay witness evidence from Ms. Kipp.

IV.    The ALJ's RFC Assessment

The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 404.1520, § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. *See id.* A claimant's RFC assessment is used at step four of the process to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *2. It is what the claimant "can still do despite his or her limitations." *Id.*

A claimant's RFC is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. *Id.* However, an inability to work must result from the claimant's "physical or mental impairment(s)." *Id.* Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." *Id.* In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." *Id.* at *7.

The ALJ found as part of the RFC assessment, used at step five (the ALJ found at step four that plaintiff could not perform any of his past work) that the plaintiff could perform a modified range of light work, with additional mental and physical non-exertional limitations. AR. 16-17. Plaintiff argues the ALJ failed to include in his RFC assessment all of the functional limitations found by Dr. Phillips, Dr. Bowes, and Ms. Kipp, as well as those plaintiff himself has described. But because as discussed above the ALJ did not err in rejecting any greater functional

limitations based on the above evidentiary sources, the ALJ also did not err in assessing the RFC that he did.

V.  The ALJ's Step Five Determination

Because the ALJ did not err either in his evaluation of the medical and other evidence in the record or in assessing plaintiff's RFC, he also did not err here at step five. If a claimant cannot perform his or her past relevant work, at step five of the sequential disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e), § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2000); *Tackett*, 180 F.3d at 1100-1101.

An ALJ's step five determination will be upheld if the weight of the medical evidence supports the hypothetical posed to the vocational expert. *Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1987); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). Thus, the ALJ's description of the claimant's functional limitations "must be accurate, detailed, and supported by the medical record." *Id.* (citations omitted).

The ALJ found plaintiff could perform other jobs existing in significant numbers in the national economy, based on the vocational expert's testimony offered at the hearing in response to a hypothetical question concerning an individual with the same age, education, work experience and RFC as plaintiff. AR 23-24. Again, plaintiff argues based on the above alleged errors that the hypothetical question the ALJ posed and the vocational experts response thereto are not supported by substantial evidence. Plaintiff has not shown that the additional limitations posed to the vocational expert – being off-task more than ten percent of the time or absent two or

more days per month or needing to lie down for up to four hours per day (Dkt. 15, p. 19 (citing AR 68)) – should have been adopted by the ALJ in determining plaintiff's ability to work.

<u>CONCLUSION</u>

Based on the foregoing discussion, the Court finds the ALJ properly determined plaintiff to be not disabled. Defendant's decision to deny benefits therefore is AFFIRMED.

Dated this 12th day of January, 2018.

Theresa L. Fricke
United States Magistrate Judge